# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

DIANE W SIRON,

    Plaintiff,

v.                                        CASE NO. 1:16-cv-00228-WTH-GRJ

NANCY A BERRYHILL,

    Defendant.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION
## AND AFFIRMING THE DENIAL OF BENEFITS

This cause comes on for consideration upon the Magistrate Judge's Report and Recommendation. (ECF No. 25). The parties have been furnished a copy of the Report and Recommendation and have been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1). Plaintiff has filed objections at ECF No. 26 to which defendant responded, ECF No. 27. I have made a de novo review based on those objections and the response.

Having considered the Report and Recommendation, and the timely filed objections, I have determined that the Report and Recommendation should be adopted. Plaintiff filed for disability benefits in 2010 but her claim was denied by the Commissioner. Plaintiff filed case number 1:12-cv-5-MP-GRJ challenging that denial of benefits. In that case, plaintiff raised a single argument: that the ALJ erred at step three by not finding that she met the requirements of Listing 12.05(B) or 12.05(C) for mental retardation due to her low IQ score and additional severe impairments. This Court affirmed the denial of benefits, and plaintiff appealed to the Eleventh Circuit. The Eleventh Circuit reversed and remanded the case to the Commissioner.

The Eleventh Circuit found that substantial evidence did not support the decision of the Administrative Law Judge ("ALJ") to decline to use plaintiff's full scale IQ score (which was 59) in favor of one of the indices that made up that full scale score, the "perceptual reasoning index" ("PRI") (which was 73):

> A claimant may qualify under subsection (B) of § 12.05 if she demonstrates "[a] valid verbal, performance, or full scale IQ of 59 or less." "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." Id. § 12.00(D)(6)(c) (emphasis added). "Generally, it is preferable to use IQ measures that are wide in scope and include items that test both verbal and performance abilities." Id. at § 12.00(D)(6)(d). "However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." Id. at § 12.00(D)(6)(a); *see Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (per curiam). Reports that "[do] not include the quantum of medical evidence required to document whether the results of the intelligence test were consistent with the plaintiff's daily behavior" are given less weight than those that "ma[k]e the required specific findings regarding plaintiff's mental condition, and extensively discuss[] her personal and medical history and current lifestyle in support of [the] findings." *Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984).
>
> The ALJ's decision to discredit Siron's full scale IQ in favor of her PRI score is not supported by substantial evidence. Because the lowest of the verbal, performance, and full scale IQs should be used in conjunction with § 12.05(B), see § 12.00(D)(6)(c), the ALJ should have applied Siron's full scale IQ of 59 in assessing whether Siron satisfied § 12.05(B). Use of full scale IQ is also supported by Section 12.00's instruction that "it is preferable to use IQ measures that are wide in scope and include items that test both verbal and performance abilities." § 12.00(D)(6)(d). Although an ALJ may reject the lowest IQ score, the ALJ's decision to do so here was not supported by substantial evidence.
>
> First, the evidence presented in cases where we affirmed an ALJ's rejection of an IQ score overwhelmingly indicated that the claimant was not mentally retarded and likely attempted to tailor results to effect a desired outcome, which is not the case here. *See Popp*, 779 F.2d at 1499 (citing Popp's history of teaching algebra and near completion of a bachelor's degree as "substantial evidence . . . to support the ALJ's finding that Popp [was] not mentally retarded"); *see also Strunk*, 732 F.2d at 1360 (rejecting the claimant's IQ

> score and noting responses that "contradict[ed] . . . her normal ability of social interactions and conversation" as well as her "deliberate fabrication" (internal quotation marks omitted)). Unlike *Popp* and *Strunk*, Siron's history completely lacks evidence "suggest[ing] that [she] attempted to appear in a very unfavorable light." *Popp*, 779 F.2d at 1499.
>
> Second, Dr. Tozzo-Julian's determination that "the [PRI] appears to be the best measure of [Siron's] overall intelligence," a determination on which the ALJ relied, is conclusory and unsupported by her own, more specific findings regarding Siron's personal and medical history, current lifestyle, daily behavior, and mental condition. *See Strunk*, 732 F.2d at 1360 (discrediting one psychiatrist's determination that the claimant was mentally retarded in favor of another psychiatrist's contrary conclusion because the former lacked such specific findings, while the latter based his conclusion on such findings). In Dr. Tozzo-Julian's 2008 evaluation, she noted Siron's "moderately impaired" attention, "errors on serial threes and [inability] to complete serial sevens," "moderately impaired" digit span, "problems focusing on most tasks," "moderately impaired" memory functions, "below average" verbal reasoning skills, "low average" premorbid intelligence, inability to spell "world" backward, and "attentional deficits." Dr. Tozzo-Julian noted similar symptoms in her 2010 evaluation.
>
> Therefore, we reverse the district court's order affirming the Commissioner and remand with instructions to remand for a new hearing consistent with this opinion.

Judge Paul then remanded the case to the Commissioner for further proceedings on the mandate of the Eleventh Circuit. ECF No. 27 in 1:12-cv-5-MP-GRJ. Upon remand, a different ALJ held a hearing and again found that plaintiff did not meet the requirements of Listings 12.05(B) or 12.05(C) because (1) the doctor who tested plaintiff did, in fact, provide substantial evidence to support reliance on the PRI rather than the lower full scale IQ score even if the first ALJ failed to set out those findings in his order; and (2) even if the lower score is used, 12.05(B) and 12.05(C) also require a finding of "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22," which plaintiff had not shown.

Plaintiff filed the instant case, challenging the second ALJ's findings, arguing that the ALJ findings contradicted the finding of the Eleventh Circuit that substantial evidence did not support discrediting the lower full scale IQ score in favor of the PRI score. This Court agrees with the Magistrate Judge that the denial of benefits should be affirmed. First, the opinion of the second ALJ went much further than that of the first ALJ in setting out the bases upon which the doctor who administered the IQ test relied to discredit the full scale score. The first ALJ wrote only the following:

> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. Although, the administration of the WAIS-IV resulted in a Full Scale IQ of 59, the examining psychologist noted discrepancies in the subtest scores and in the claimant's adaptive functioning, including prior work as a cashier, CNA, cook and receptionist, and concluded that the claimant had borderline intellectual functioning, not mental retardation (Exhibit 19F). Great weight is accorded to the opinion of this specialist in the field of mental health because she had the benefit of conducting a mental status examination and psychometric test results and her opinion is consistent with the record as a whole.

The second ALJ, however, reached those conclusions but then provided the specific findings of the doctor supporting the decision to not use the full scale IQ score:

> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less, as well as the "paragraph C" criteria are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Dr. Tozzo-Julian proctored the Wechsler Adult Intelligence Scale-IV, in which the claimant earned a verbal comprehension index of 68, perceptual reasoning index of 73, working memory index of 58, processing speed of 59, and a full scale IQ of 59. Dr. Tozzo-Julian noted that the claimant's full scale IQ indicates an extremely low range of intelligence; however given the significant differences between the index scores, each domain must be considered independently. Given the claimant's history, Dr. Tozzo-Julian found that her "Perceptual Reasoning Index appears to be the best measure of her overall intelligence." Dr. Tozzo-Julian supported this conclusion and noted that the claimant was functioning in the borderline range of intelligence, with strength on tasks that required visual spatial abilities and visual construction skills, and

difficulty on tasks that require processing speed and auditory attention (Exhibit 19F). As clearly articulated above, the claimant's full-scale IQ score does not appear to be an accurate depiction of the claimant's intellectual functioning and thus does not satisfy the "paragraph B or C" criteria of the listing. The undersigned further notes that Dr. Tozzo-Julian's diagnosis of borderline intellectual functioning, based on the claimant's more accurate "Perceptual Reasoning Index," is consistent with her past relevant work, which she almost exclusively performed at the semiskilled level (Exhibit 21E). Thus, the second

ALJ addressed the concern of the Eleventh Circuit that the opinion of the doctor who administered the test was conclusory and not supported by substantial evidence. The second ALJ explained that the doctor relied upon large differences between the index scores coupled with her mental and communication skills as observed firsthand by the doctor, such that the PRI of 73 more accurately reflected her abilities. This provides substantial evidence supporting the ALJ's reliance upon the doctor's decision to use the higher, PRI.

Second, the Commissioner points out that to satisfy Listing 12.05, the claimant must show that she satisfies one of sublisting (A) through (D) <u>and</u> meet the requirements of the introductory paragraph, which provides as follows:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.

That is, the claimant must have each of the following: "significantly subaverage general intellectual functioning" (as demonstrated by her 59 IQ, according to plaintiff); "deficits in adaptive functioning"; <u>and</u> manifestations of these deficits in adaptive behavior before age 22. The second ALJ correctly found that plaintiff had not shown such deficits in adaptive function with the following language:

> Lastly, taking into consideration the claimant's past relevant work which she performed for many years at the semiskilled level, and the fact that there are no academic records in the file, the undersigned notes that the claimant has undoubtedly not suffered "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22," as required by listing 12.05.

In finding plaintiff did not have the requisite deficits in adaptive functioning required for Listing 12.05, the ALJ noted plaintiff's past work record of semi-skilled work (Tr. 28-29, 549, 593). The ALJ also noted plaintiff's reported academic performance showing that she completed through the 9th grade and only left in the 10th grade because she was having a baby (Tr. 15, 549). Plaintiff also reported that any issues she has with activities of daily living are related to her physical condition and not her mental condition (Tr. 18-21, 25-26, 168, 548, 579, 582). The record also shows that plaintiff was able to drive previously, raised two children, maintained a residence, paid bills, read as a hobby daily, and socialized at church functions three times a week (Tr. 18-20, 167, 169-71, 482, 582-83). Thus, substantial evidence supports the ALJ's decision that plaintiff has failed to show that she had deficits in adaptive functioning (and had them prior to age 22). This alone caused her not to meet Listing 12.05. Accordingly, it is hereby

ORDERED AND ADJUDGED:

1. The Magistrate Judge's Report and Recommendation, ECF No. 25, is adopted and incorporated by reference in this order.
2. The Clerk shall enter the following judgment: "The decision of the Commissioner, denying benefits, is affirmed." The Clerk is directed to close the file.

DONE AND ORDERED this *1st* day of February, 2018

_____
**UNITED STATES DISTRICT JUDGE**